Filed 5/22/23  In re E.B. CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re E.B., a Person Coming Under the Juvenile Court Law. | |
| TULARE COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>KRISTEN B.,<br><br>    Defendant and Appellant. | F085488<br><br>(Super. Ct. No. JJV073376A)<br><br>**OPINION** |

## <u>THE COURT</u>[*]

APPEAL from an order of the Superior Court of Tulare County.  John P. Bianco, Judge.

Carol A. Koenig, under appointment by the Court of Appeal, for Defendant and Appellant.

Jennifer M. Flores, County Counsel, and Carol Helding, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Peña, Acting P. J., Smith, J. and Meehan, J.

## INTRODUCTION

Kristen B. (mother) and Eric M. (father) are the parents of son E.B. (born November 2019). Mother appeals from the juvenile court's order terminating her parental rights pursuant to Welfare and Institutions Code section 366.26.[1] She contends the Tulare County Health and Human Services Agency (the agency) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law because certain extended family members were not asked about E.B.'s possible Indian ancestry.[2] Additionally, she argues the ICWA notice sent to the Cherokee tribes was deficient. The agency disagrees prejudicial error occurred.

Consistent with our decisions in *In re K.H.* (2022) 84 Cal.App.5th 566 (*K.H.*) and *In re E.C.* (2022) 85 Cal.App.5th 123 (*E.C.*), we conclude "the [agency's errors were] prejudicial because neither the agency nor the court gathered information sufficient to ensure a reliable finding that ICWA does not apply and remanding for an adequate inquiry in the first instance is the only meaningful way to safeguard the rights at issue. ([*In re* ]*A.R.* [(2021)] 11 Cal.5th [234,] 252–254 [(*A.R.*)].) Accordingly, we conditionally reverse the juvenile court's finding that ICWA does not apply and remand for further proceedings consistent with this opinion, as set forth herein." (*K.H.*, at p. 591; accord, *E.C.*, at pp. 157–158.)

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

## A.    Petition and Detention

On February 23, 2021, the agency filed a petition on behalf of E.B. pursuant to section 300, subdivisions (b)(1) and (g).  The agency later filed a first amended petition pursuant to the same subdivisions.

The detention report stated ICWA did or could apply.  Father had reported he could have Cherokee ancestry through paternal great-grandfather.  He did not sign a Parental Notification of Indian Status form (ICWA-020) because his interview with the agency was conducted via video chat.  Mother denied having Indian ancestry.  She did not sign an ICWA-020 form either as her interview was also conducted via video chat.  Maternal grandmother, Brenda B., denied having Indian ancestry and signed an ICWA-020 form.  The social worker filled out Indian Child Inquiry Attachment forms (ICWA-010(A)) for all three inquiries.

On February 24, 2021, the juvenile court held a detention hearing and conducted ICWA inquiries with mother and father.  Mother again denied having Indian ancestry.  Father testified, "I think there's some Cherokee on my mother's father's side [(i.e., paternal great-grandfather)]," who he identified as John M.  Father had his contact information but stated paternal great-grandfather had dementia and was living in an assisted living facility.  The court asked if there was another person who would have more information about the family's Indian ancestry.  Father stated paternal great-aunt Karen M. would have more information and provided her contact information.  The court found there was insufficient reason to believe that E.B. was or could be an Indian child, but said, "However, due to a claim of remote ancestry, and to assist the [a]gency in providing proper notice to the tribe for determination whether the child is an Indian child,

---

**3**    Because the sole issue on appeal concerns ICWA, we restrict our facts to those bearing on that issue or helpful for clarity.

… father is ordered to provide [the agency], within five days of today's hearing, all family records regarding any Indian ancestry, and name, address, and telephone number of any relative who may have information regarding a claim of Native American Indian Ancestry." The court ordered E.B. detained and set a combined jurisdiction and disposition hearing.

**B.        Jurisdiction and Disposition**

The jurisdiction and disposition report stated ICWA did or could apply. The report reiterated the previous information. A social worker contacted paternal great-aunt Karen regarding the family's Indian ancestry. She confirmed the family had Indian ancestry, but said it was remote. She said "great, great, great[] aunt Mathilda H[.] was full blooded Cherokee." Mathilda would have been E.B.'s "great, great, great, great, great aunt." She provided information on Mathilda and other familial information.

On March 8, 2021, the agency sent a Notice of Child Custody Proceeding for Indian Child (ICWA-030) to the Bureau of Indian Affairs (BIA), the Department of the Interior, the Cherokee Nation, the Eastern Band of Cherokee Indians, and the United Keetoowah Band of Cherokee.

On April 6, 2021, a social worker contacted Karen again to gather additional information on paternal grandparents and great-grandparents.

On April 6, 2021, the agency sent a second set of ICWA-030s to the BIA, the Department of the Interior, and the three Cherokee tribes. The agency noted the new ICWA-030s were submitted with corrected information.

On April 7, 2021, the juvenile court held an initial combined jurisdiction and disposition hearing. Mother and maternal grandfather, Paul B., were present, but the hearing was continued.

On April 12, 2021, the juvenile court held a continued hearing. Mother, father, and maternal grandfather were present. The court sustained the petition, ordered E.B.

4.

removed, and found there was insufficient reason to believe E.B. was or could be an Indian child. A six-month review hearing was set.

**C.     ICWA and Six-Month Status Review**

In June 2021, the agency prepared a report outlining its ICWA inquiry and notice efforts. The agency had only received a response from one of the three tribes. The Eastern Band of Cherokee Indians responded, stating E.B. was not a tribal member and was not eligible for registration. After the Eastern Band received the second ICWA-030 notice, they sent a second response stating the same.

On June 3, 2021, a supervising social worker attempted to contact the Cherokee Nation and left a voice message requesting a call back. The Cherokee Nation's voicemail stated there was a 90-day response time for notices. The agency noted 90 days had passed since the first ICWA-030 notice had been sent, but not the second ICWA-030 notice. The following day, the social worker spoke with the Cherokee ICWA supervisor who reported the tribe was significantly behind in processing notices. The social worker asked about eligibility requirements for tribal membership and was informed eligibility was based on being a direct biological descendent of a tribal member. The ICWA supervisor explained that eligibility did not mean the child qualified as an Indian child under ICWA. To qualify under ICWA, the child had to be an enrolled member, or the biological child of an enrolled member and eligible for membership.

On June 3, 2021, a supervising social worker attempted to contact the United Keetoowah Band of Cherokee and left a voice message requesting a call back. The social worker called again the following day and left another message. The tribe's voicemail stated it would only provide a response if the child was deemed eligible for membership or was an enrolled member. The agency had not received a response. The agency recommended the juvenile court find ICWA inapplicable.

On October 4, 2021, the juvenile court held the combined ICWA and six-month status review hearing. The court noted time had run for the two remaining tribes to

respond to the ICWA notices and found ICWA did not apply. Mother's family reunification[4] services were continued, father's reunification services were terminated, and a 12-month review hearing was set.

**D.     Twelve-Month Status Review**

On April 11, 2022, a social worker contacted the Cherokee Nation eligibility supervisor who confirmed E.C. was not an Indian child.

On April 11, 2022, a social worker contacted the United Keetoowah Band of Cherokee and left a voice message requesting a call back. On April 18, the social worker again attempted to contact the tribe and left a voice message for the director requesting a call back. On April 19, 2022, the social worker attempted to contact the tribal secretary but was unable to leave a voice message. The agency had yet to receive a response from the tribe.

On April 27, 2022, the juvenile court terminated mother's reunification services and set a section 366.26 hearing.

**E.     Section 366.26**

The section 366.26 report reiterated the information in the previous reports and added that there had not been new claims of Indian ancestry.

On November 21, 2022, the juvenile court held a section 366.26 hearing and ordered parental rights terminated with a permanent plan of adoption.

On December 21, 2022, mother filed a notice of appeal.

---

**4**     At the hearing, the juvenile court erroneously stated mother's maintenance services were continued, but the findings and orders correctly reflect it was her reunification services that were continued.

# DISCUSSION

## I. ICWA

### A. Legal Principles

" 'ICWA is a federal law giving Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation' [citations], in furtherance of 'federal policy " 'that, where possible, an Indian child should remain in the Indian community' " ' [citations]. 'ICWA establishes minimum federal standards, both procedural and substantive, governing the removal of Indian children from their families' [citations], and '[w]hen ICWA applies, the Indian tribe has a right to intervene in or exercise jurisdiction over the proceeding.' " (*K.H.*, *supra*, 84 Cal.App.5th 566, 594, fn. omitted; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 138, fn. omitted.)

" 'In 2006, California adopted various procedural and substantive provisions of ICWA.' [Citations.] The Legislature's 'primary objective … was to *increase* compliance with ICWA. California Indian Legal Services (CILS), a proponent of the bill, observed that courts and county agencies still had difficulty complying with ICWA 25 years after its enactment, and CILS believed codification of [ICWA's] requirements into state law would help alleviate the problem.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 595; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 138–139.)

" 'In 2016, new federal regulations were adopted concerning ICWA compliance. [Citation.] Following the enactment of the federal regulations, California made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements. [Citations.] Those changes became effective January 1, 2019 ….' [Citation.] Subsequently, the Legislature amended section 224.2, subdivision (e), to define 'reason to believe,' effective September 18, 2020." (*K.H.*, *supra*, 84 Cal.App.5th at pp. 595–596, fn. omitted; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 139.)

### 1. Summary of Duties

"[W]hether a child is a member, or is eligible for membership, in a particular tribe is a determination that rests exclusively with the tribe, and neither the agency nor the court plays any role in making that determination. [Citations.] ' "Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case." ' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 596; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 139–140.)

"In California, section 224.2 'codifies and elaborates on ICWA's requirements of notice to a child's parents or legal guardian, Indian custodian, and Indian tribe, and to the [Bureau of Indian Affairs].' " (*In re A.R.* (2022) 77 Cal.App.5th 197, 204.) California law imposes "an affirmative and continuing duty [on the court and the county welfare agency] to inquire whether a child for whom a petition under [s]ection 300, … may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a).)

"The [state law] duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).) "If a child is placed into the temporary custody of a county welfare [agency] pursuant to [s]ection 306 … the county welfare [agency] … has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).) Additionally, "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).)

"If the initial inquiry provides 'reason to believe' that an Indian child is involved in a proceeding—that is, if the court or social worker 'has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe'—then the court or social worker 'shall make further inquiry' regarding the child's possible Indian status as soon as practicable." (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 999 (*Ezequiel G.*), citing § 224.2, subd. (e).) "Further inquiry 'includes, but is not limited to, all of the following:  [¶] (A) Interviewing the parents, Indian custodian, and extended family members[;]  [¶] (B) Contacting the Bureau of Indian Affairs and the State Department of Social Services[; and] [¶] (C) Contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility.' " (*Ezequiel G.*, at p. 999.)

"If there is 'reason to know' a child is an Indian child, the agency shall provide notice to the relevant tribes and agencies in accordance with section 224.3, subdivision (a)(5)." (*Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 999, citing § 224.2, subd. (f).)  "There is 'reason to know' a child is an Indian child if any one of six statutory criteria is met—i.e., if the court is advised that the child 'is an Indian child,' the child's or parent's residence is on a reservation, the child is or has been a ward of a tribal court, or either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (*Ezequiel G.*, at p. 999, citing § 224.2, subd. (d).)

County welfare departments "must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes.  Whenever new

information is received, that information must be expeditiously provided to the tribes." (Cal. Rules of Court, rule 5.481(a)(5).)[5]

## B.     Analysis

### 1.     Summary of ICWA Inquiry and Notice

In the present case, mother and maternal grandmother denied having Indian ancestry. Father claimed he had Cherokee ancestry through paternal great-grandfather. At the detention hearing, the juvenile court conducted ICWA inquiries with mother and father. Mother denied having Indian ancestry, and father confirmed he believed he had Cherokee ancestry through paternal great-grandfather. He informed the court paternal great-grandfather was still alive and although he had his telephone number, paternal great-grandfather suffered from dementia and was living in an assisted living facility. However, father reported paternal great-aunt Karen would have more information about the family's Indian ancestry. He provided her phone number in court. Due to father's remote claim of Indian ancestry, the court ordered him to provide the agency with all family records pertaining to Indian ancestry within five days.

After the detention hearing, the agency contacted Karen to obtain familial information. She said the family had Cherokee ancestry through paternal great-great-great-great-great aunt Mathilda, who was full blooded Cherokee. Karen provided information for Mathilda, including information on her spouse and descendants. Karen also provided other familial information. Thereafter, the agency sent ICWA-030 notices to the BIA, the Department of the Interior, the Cherokee Nation, the Eastern Band of Cherokee Indians, and the United Keetoowah Band of Cherokee. The following month, a social worker contacted Karen again to obtain additional familial information, specifically relating to paternal grandparents and great-grandparents. Karen reported paternal grandfather, Joel M., was still alive and resided in Bakersfield. The agency

---

**5**     All further references to rules are to the California Rules of Court.

resent ICWA-030 notices with corrected information. A review of the second ICWA-030 notice shows the agency still made errors and omissions. Most notably, paternal great-grandfather was listed with an incorrect last name and, although Karen was listed in the notice, there was no contact information listed for her. No information was provided for maternal grandparents, aside from their names, even though the agency was in contact with them and could have obtained the information.

Additionally, the record shows maternal grandfather attended several hearings. There is no indication that the agency or the juvenile court inquired of him. Neither did the court inquire of maternal grandmother at her first appearance in court, or any other hearing she attended.

Mother contends the agency's failure to inquire of all available extended family members and the defective ICWA-030 notice resulted in prejudicial error. The agency concedes not all extended family members were inquired of and there were errors in the second ICWA-030 notice, but argues any errors were harmless.

In *K.H.* and *E.C.*, we addressed ICWA error at the inquiry stage. There, we explained our decision not to follow the approaches articulated by other appellate courts for determining whether ICWA error requires reversal and concluded that the Supreme Court's decision in *A.R.* supplies the appropriate framework for assessing prejudice in this context. (*K.H.*, *supra*, 84 Cal.App.5th at pp. 607–608, citing *A.R.*, *supra*, 11 Cal.5th at pp. 252–254; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 152.) Applying the standards we articulated in *K.H.* and *E.C.*, as we will discuss below, we conclude the agency's errors are prejudicial and remand for the agency to conduct a proper, adequate, and duly diligent inquiry is necessary.

### 2.    Standard of Review

"The juvenile court's finding that ICWA does not apply to the proceeding rests on two elemental determinations, 'subject to reversal based on sufficiency of the evidence.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting § 224.2, subd. (i)(2); accord,

11.

*E.C.*, *supra*, 85 Cal.App.5th at pp. 142–143.)  First, "[t]he court must find there is 'no reason to know whether the child is an Indian child,' which is dependent upon whether any of the six circumstances set forth in subdivision (d) of section 224.2 apply." (*K.H.*, at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C.*, at p. 143.)  Second, "[t]he juvenile court must … find a 'proper and adequate further inquiry and due diligence ….' " (*K.H.*, at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C.*, at p. 143.)

Under the substantial evidence standard, " 'a reviewing court should "not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." [Citation.]  The determinations should "be upheld if … supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence." ' [Citations.]  The standard recognizes that '[t]rial courts "generally are in a better position to evaluate and weigh the evidence" than appellate courts' [citation], and 'an appellate court should accept a trial court's factual findings if they are reasonable and supported by substantial evidence in the record' [citation].  '[I]f a court holds an evidentiary hearing, it may make credibility determinations, to which an appellate court would generally defer.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 143.)

The juvenile court's finding on the second element, however, "is ultimately discretionary because it requires the juvenile court to 'engage in a delicate balancing of' various factors in assessing whether the agency's inquiry was proper and adequate within the context of ICWA and California law, and whether the agency acted with due diligence." (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting *In re Caden C.* (2021) 11 Cal.5th 614, 640; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 143; *Ezequiel G.*, *supra*, 81 Cal.App.5th at pp. 1004–1005.)  Therefore, we employ a hybrid standard and review the court's determination for substantial evidence and abuse of discretion.  (*K.H.*, at p. 601; accord, *E.C.*, at pp. 143–144; *Ezequiel G.*, at pp. 1004–1005.)

" 'Review for abuse of discretion is subtly different [from review for substantial evidence], focused not primarily on the evidence but the application of a legal standard. A court abuses its discretion only when " ' "the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " [Citation.] But " ' "[w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court[.]" ' " [Citations.] [¶] While each standard here fits a distinct type of determination under review, the practical difference between the standards is not likely to be very pronounced.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 602; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 143–144.)

"Review of the juvenile court's findings under the foregoing standards is deferential, but ' "an appellate court [nevertheless] exercises its independent judgment to determine whether the facts satisfy the rule of law." ' [Citations.] Where the material facts are undisputed, courts have applied independent review to determine whether ICWA's requirements were satisfied." (*K.H.*, *supra*, 84 Cal.App.5th at p. 602; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 144.)

### 3. Agency and Juvenile Court Erred

As previously mentioned, "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).) Moreover, when "a child is placed into the temporary custody of a county welfare [agency] …, the county welfare [agency] … has a duty to inquire whether [the] child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents,

13.

or Indian custodian is domiciled." (§ 224.2, subd. (b).) Extended family members include adult grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins. (25 U.S.C. § 1903(2); § 224.1, subd. (c).)

"If the initial inquiry provides 'reason to believe' that an Indian child is involved in a proceeding—that is, if the court or social worker 'has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe'—then the court or social worker 'shall make further inquiry' regarding the child's possible Indian status as soon as practicable." (*Ezequiel G.*, *supra*, 81 Cal.App.5th 984, 999, citing § 224.2, subd. (e).) "Further inquiry includes, but is not limited to, all of the following: [¶] (A) Interviewing the parents, Indian custodian, and extended family members *to gather the information required in paragraph (5) of subdivision (a) of [s]ection 224.3.* [¶] (B) Contacting the [BIA] and the State Department of Social Services …. [¶] (C) Contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility.…" (§ 224.2, subd. (e)(2)(A)–(C), italics added.) The information required to be gathered under section 224.3, subdivision (a)(5), includes "[a]ll names known of the Indian child's biological parents, grandparents, and great-grandparents, or Indian custodians, including maiden, married, and former names or aliases, as well as their current and former addresses, birth dates, places of birth and death, tribal enrollment information of other direct lineal ancestors of the child, and any other identifying information, if known." (§ 224.3, subd. (a)(5)(C).)

Here, the agency failed to inquire of all available extended family members, which fell short of complying with the plain language of section 224.2, subdivision (b). There may be cases in which there is no one else to ask, but if that is so, the record must be developed to reflect that fact and supported by documentation. (Rule 5.481(a)(5).) "On a well-developed record, the court has relatively broad discretion [in such cases] to determine [that] the agency's inquiry was proper, adequate, and duly diligent on the

14.

specific facts of the case." (*K.H.*, *supra*, 84 Cal.App.5th at p. 589; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 157.) Additionally, the agency failed to gather sufficient information for a further inquiry. (See *In re Louis S.* (2004) 117 Cal.App.4th 622, 630 ["Notice is meaningless if no information or insufficient information is presented to the tribe to make that determination."].)

Accordingly, the juvenile court's finding that ICWA did not apply was not supported by substantial evidence, and its contrary conclusion was an abuse of discretion. (§ 224.2, subd. (i)(2).)

### 4. Prejudice

"Where, as here, the deficiency lies with the agency's duty of … inquiry and a juvenile court's related finding of 'proper and adequate further inquiry and due diligence' (§ 224.2, subd. (i)(2)), the error is one of state law ([*In re*] *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742). Under the California Constitution, '[n]o judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' (Cal. Const., art. VI, § 13.)" (*K.H.*, *supra*, 84 Cal.App.5th at p. 606; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 151.)

" '[T]o be entitled to relief on appeal from an alleged abuse of discretion, it must clearly appear the resulting injury is sufficiently grave to manifest a miscarriage of justice' [citations], and California law generally interprets its constitutional miscarriage of justice requirement 'as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error.' " (*K.H.*, *supra*, 84 Cal.App.5th at pp. 606–607; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 151–152.)

However, in *A.R.*, the Supreme Court "recognized that while we generally apply a *Watson*[6] likelihood-of-success test to assess prejudice, a merits-based outcome-focused test is not always appropriate because it cannot always adequately measure the relevant harm. [Citation.] In other words, where the injury caused by the error is unrelated to an outcome on the merits, tethering the showing of prejudice to such an outcome misplaces the measure, at the expense of the rights the law in question was designed to protect." (*K.H.*, *supra*, 84 Cal.App.5th at p. 609, italics omitted.)

As we explained in *K.H.*, " 'ICWA compliance presents a unique situation ….' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 608.) "ICWA is not directed at reaching, or protecting, a specific outcome on the merits." (*Id.* at p. 609; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 154.) Rather, " '[t]he purpose of ICWA and related California statutes is to provide notice to the tribe sufficient to allow it to determine whether the child is an Indian child, and whether the tribe wishes to intervene in the proceedings' [citation], and an adequate initial inquiry facilitates the information gathering upon which the court's ICWA determination will rest." (*K.H.*, at p. 608; accord, *E.C.*, at pp. 152–153.) Yet, "while the appealing party is usually a parent, parents do not bear the burden of gathering information in compliance with ICWA [citations], and parents may raise the claim of error for the first time on appeal." (*K.H.*, at p. 608; accord, *E.C.*, at p. 153.) Further, the ultimate determination whether a child is an Indian child rests with the tribe, not with a parent, the agency, or the juvenile court. (*K.H.*, at p. 590; accord, *E.C.*, at pp. 139–140.) "[W]here the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due diligence, reversal for correction is generally the only effective safeguard." (*K.H.*, at p. 610, citing *A.R.*, *supra*, 11 Cal.5th at pp. 252–254; accord, *E.C.*, at p. 155.)

---

**6**      *People v. Watson* (1956) 46 Cal.2d 818, 836.

Here, the agency's inquiry " 'fell well short of that required to gather the information needed to meaningfully safeguard the rights of the tribes, as intended under ICWA and California law' " (*E.C.*, *supra*, 85 Cal.App.5th at p. 156, quoting *K.H.*, *supra*, 84 Cal.App.5th at p. 620), and "[a] finding of harmlessness on this record would necessarily require speculation and 'is at odds with the statutory protections that ICWA and California law intend to afford Indian children and Indian tribes.' " (*E.C.*, at p. 155, quoting *K.H.*, at p. 611.) Therefore, the error is prejudicial and reversal is required.

Accordingly, the juvenile court's finding that ICWA does not apply is conditionally reversed and the matter is remanded. The juvenile court is instructed to ensure the agency conducts " 'a proper, adequate, and duly diligent inquiry under section 224.2, subdivision[s] (b) [and (e)], and document its inquiry in the record in compliance with rule 5.481(a)(5).' " (*E.C.*, *supra*, 85 Cal.App.5th at p. 157, quoting *K.H.*, *supra*, 84 Cal.App.5th at p. 621.) " 'This should not be interpreted as requiring an exhaustive search for and questioning of every living relative of [E.B.]' but '[w]e leave that determination for the juvenile court in the first instance because it is better positioned to evaluate the evidence provided by the [agency]. So long as the court ensures the inquiry is reasonable and of sufficient reach to accomplish the legislative purpose underlying ICWA and related California law, the court will have an adequate factual foundation upon which to make its ICWA finding. (§ 224.2, subd. (i)(2).)' " (*E.C.*, at p. 157, quoting *K.H.*, at p. 621.)

## DISPOSITION

The juvenile court's finding that ICWA does not apply is conditionally reversed, and the matter is remanded to the court with directions to order the agency to comply with the inquiry and documentation provisions set forth in section 224.2, subdivisions (b) and (e), and rule 5.481(a)(5). The court is directed to comply with the inquiry provisions of section 224.2, subdivision (c). If, after determining that an adequate inquiry was made consistent with the reasoning in this opinion, the court finds that ICWA applies, the court

17.

shall vacate its existing order and proceed in compliance with ICWA and related California law. If the court instead finds that ICWA does not apply, its ICWA finding shall be reinstated. In all other respects, the juvenile court's order is affirmed.